**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ROSIE LAWRENCE-SLATER,** | : | **CASE NO.** |
| | : | |
| PLAINTIFF, | : | **JUDGE** |
| | : | |
| vs. | : | |
| | : | |
| **THE CHRIST HOSPITAL,** | : | **COMPLAINT SEEKING** |
| | : | **COMPENSATORY AND PUNITIVE** |
| DEFENDANT. | : | **MONETARY DAMAGES** |
| | : | |
| | : | **JURY DEMAND** |

## I.      INTRODUCTION

1. This is an action brought by patient Rosie Lawrence-Slater ("Rosie") against The Christ Hospital ("Christ Hospital") challenging the discriminatory, retaliatory, and other unlawful conduct by Christ Hospital causing multiple injuries to Rosie during her admission to Christ Hospital in November 2020 and thereafter during subsequent hospitalizations.

2. Rosie is an individual with disabilities including, among others, a mild intellectual disability, Combined Variable Immunodeficiency (C.V.I.D.), Granulomatous and Lymphocytic Interstitial Lung Disease (G.L.I.L.D.), Ehlers-Danlos Syndrome, and diabetes.

3. During Rosie's admission to Christ Hospital in November 2020, and during a time Rosie was wholly unable to attend to herself or communicate her needs while critically ill, heavily sedated, and on a ventilator, Christ Hospital barred Joy Lawrence-Slater (Rosie's mother and designated support person) from staying present with Rosie in Christ Hospital as she had continuously been for the first twenty-three days of Rosie's hospitalization.  Rosie necessarily suffered significant physical pain and suffering and significant emotional

1

injuries because Christ Hospital unlawfully prevented Joy from helping Rosie with orientation, emotional self-regulation, medical decision-making, personal care, and basic physical needs. Without Joy present, Christ Hospital was unable to secure informed consent from Rosie.

4. This Complaint seeks compensatory and punitive damages for Christ Hospital's unlawful conduct.

## II. PARTIES

5. Plaintiff Rosie Lawrence-Slater is a 34-year old woman with various disabilities who is long known to Christ Hospital. Rosie resides in this judicial district.

6. The Christ Hospital self-describes itself as an "acute care facility" and a "longstanding beacon in the community." In October 2020, Christ Hospital admitted Rosie to one of its facilities in this judicial district and in November 2020, Christ Hospital unlawfully injured Rosie. Upon information and belief, Christ Hospital receives federal funds.

## III. JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as Rosie asserts claims under federal law. This Court has supplemental jurisdiction over Rosie's state law claims pursuant to 28 U.S.C. §1367.

8. This Court has personal jurisdiction over Christ Hospital as it is an Ohio non-profit corporation located in Hamilton County, Ohio, which is within the area encompassed by the United States District Court for the Southern District of Ohio. Christ Hospital's wrongful and illegal actions occurred in Hamilton County, Ohio.

9. Venue lies in this forum pursuant to 28 USC §1391(a) and Southern District Local Civil Rule 82.1 because the claims arose in Hamilton County, Ohio.

### IV. ADDITIONAL FACTS

10. Christ Hospital admitted Rosie in October 2020, to the Intensive Care Unit directly from the Emergency Room. For the first twenty-three days of Rosie's admission, Christ Hospital explicitly acknowledged Rosie's civil rights and treated Joy as Rosie's essential support person.

11. At the time of admission, both in the Emergency Room and again, prior to being intubated in the Intensive Care Unit, Rosie self-identified as an individual with disabilities and identified Joy as her chosen support person. Christ Hospital's Dr. Jivan wrote: "For the patient's sake I do agree that the mother should be there for her as she will need a familiar face present."

12. On October 27, 2020, Joy wrote to Christ Hospital official Becky Daniels to expressly confirm their conversation during which they agreed that Joy would continue as Rosie's support person as a reasonable disability-related accommodation. Joy committed to complying with Christ Hospital health protocol.

13. On November 11, 2020, Christ Hospital instituted an overbroad and unlawful visitors' exclusion policy which excluded all visitors from the hospital with no exceptions for those living with disabilities. When the policy was applied, it excluded Joy from Christ Hospital with complete disregard for Rosie's essential need for a support person while Rosie was admitted to Christ Hospital.

14. On the morning of November 12, 2020, as Christ Hospital began to force Joy out of the hospital, Joy spoke with multiple Christ Hospital officials and directly informed them about Rosie's rights to have a support person.

15. Joy also wrote to Christ Hospital official Amy Connors ("Connors") on November 12, 2020, to reiterate and emphasize that Joy had been serving as Rosie's support person for the entire twenty-three days since Rosie's admission to the hospital and that Christ Hospital had already agreed that Joy was Rosie's essential support person. Joy explicitly provided the federal law mandating that Rosie have the reasonable accommodation of a support person.

16. Joy provided other corroborating information demonstrating to Christ Hospital that it was unlawful to evict Joy as Rosie's support person.

17. Joy additionally wrote to Christ Hospital prior to a Christ Hospital employee escorting Joy out of the hospital: "[Rosie] is extremely vulnerable and any emotional upset would almost certainly complicate her recovery."

18. Determined to stop Joy's presence as Rosie's support person, Christ Hospital nevertheless removed Joy on November 12, 2020. Christ Hospital officials informed Joy that she had to leave the hospital immediately. Christ Hospital officials denied Joy the opportunity to speak with the Christ Hospital administrator who made the unlawful decision to evict Joy. A Christ Hospital security guard escorted Joy to her husband's car. During the five-minute drive to their home, a resident physician called Joy on her cell phone and asked her to return to the hospital immediately to sign a consent for Rosie to have a central line inserted. After Joy's husband turned the car around and was driving Joy back to Christ Hospital, the resident physician apparently changed his mind and said he could proceed with a verbal consent. Joy gave that verbal consent.

19. During the time that Rosie was a patient of Christ Hospital, Rosie was critically ill, heavily sedated, and could not speak because she was on a ventilator. Due to Joy's removal, Rosie

4

suffered almost continuous agitation, pulling out her feeding tube, urinary catheter, and another vital tube. In the twenty-three days prior to Joy being excluded, Rosie was critically ill but she did not suffer agitation and did not pull out her tubes.

20. Rosie became so distressed during the period of time that Joy was excluded, Christ Hospital nurses had to repeatedly place Rosie in restraints and repeatedly increase sedation. Even with restraints and increased sedation, Rosie was dangerously agitated causing her to sustain both physical and emotional injuries.

21. During the time period that Joy was excluded, Rosie was so agitated that that her repeated thrashing resulted in Rosie's tracheostomy site being torn wider.

22. These injuries to Rosie, by Christ Hospital, caused her intense physical pain and suffering and emotional distress. The adverse injuries continue to the present.

23. During the first twenty-three days of Rosie's hospitalization, until Christ Hospital barred Joy's presence as Rosie's chosen support person, Joy stayed in Rosie's ICU room continuously caring for her under the direction of Rosie's nurses and respiratory therapists.

24. Rosie's nurse wrote this about Rosie's struggles and injuries during the time that Joy was excluded from the hospital leaving Rosie without her support person: "Patient had issues with agitation/restlessness overnight. Frequently tossing her legs around in the bed. The patient accidentally disconnected her urinary catheter from the drainage bag due to frequent leg movement. 4 pont [sic] restraints required for a short amount of time to keep the patient safe. Multiple Versed pushes were needed, and a ketamine gtt was restarted."

25. By contrast, after Joy was allowed to resume her duties as Rosie's support person, Rosie's nurse wrote: "Patient slept most of the night and did not require any PRN medications for

5

anxiety/restlessness. *Patient appears much more calm with mother present at bedside*" (emphasis added).

26. When Joy was finally allowed to return to Christ Hospital, on the evening of November 14, 2020, Christ Hospital retaliated against Rosie by attempting to constructively evict Joy by instructing Joy that she could not possess drinking water in Rosie's room and further, that she could not drink water from the faucet in Rosie's room. Christ Hospital further informed Joy that she was not permitted to eat or drink anything in Rosie's room. Joy's physician informed Joy that Joy suffered multiple blood clots in her lungs as a result of the deprivation of fluids for several days during her stay at Christ Hospital.

27. Finally, on November 16, 2020, a Christ Hospital official expressed regret at Christ Hospital's treatment of Joy and authorized Joy to resume drinking from a cup with a lid in Rosie's room which was what Joy was permitted to do from the time of Rosie's admission until Christ Hospital evicted Joy on November 12, 2020.

28. When Joy was finally permitted to return to Rosie's room on Saturday night, November 14, 2020, Joy observed that Rosie's tracheostomy site was torn much wider than it had been when Joy was evicted from the hospital on the morning of November 12, 2022. She asked a nurse what happened and was told that Rosie tore her tracheostomy site open when she was throwing her head from side-to-side during the many periods of extreme agitation that Rosie suffered as a result of Joy's absence. Christ Hospital informed Joy that Rosie spent much of the time Joy was barred from Christ Hospital frantically rolling around, throwing her head back and forth, and pulling out tubes.

29. As an experienced and knowledgeable support person, Christ Hospital regularly commended Joy for advocating for Rosie and helping the medical professionals better fulfill their own obligations.

30. Nevertheless, during Rosie's several subsequent admissions to Christ Hospital, Christ Hospital has continued to threaten Rosie and Joy telling them that Joy would again be forced to leave Christ Hospital.

31. The Joint Commission, which accredits Christ Hospital, requires, among other mandates: "A patient support person should provide emotional support, give comfort, and alleviate fear during the course of the patient's hospital stay. *Patients should have access to their chosen support person at all times*" (emphasis added).

32. The United States Department of Health and Human Services ("HHS") has sanctioned other hospitals for violating the civil rights of individuals with disabilities by preventing patients from having their support persons present in the hospital. HHS has made it clear that even in a world-wide pandemic, hospitals must not deprive those living with disabilities of their chosen support person and that doing so is a violation of federal civil rights law. Christ Hospital was obligated to protect Rosie's civil rights but intentionally chose to do otherwise. It is elementary that Christ Hospital was precluded by law from discriminating and retaliating against Rosie and Joy.

33. Individuals with disabilities may not be denied the equal opportunity to participate in and benefit from hospital programs and services. HHS leaves no doubt: "Permitting a patient or resident with a disability to use a support person when necessary to have an equal opportunity to obtain and benefit from healthcare services is a reasonable modification that

generally must be provided unless it would fundamentally alter the nature of the service, program, or activity or impose an undue financial and administrative burden."

34. Obviously, Joy's service as a support person for Rosie was a reasonable modification required for Rosie's disabilities which imposed no undue financial or administrative burden on Christ Hospital.

35. HHS has itself ruled adverse to hospitals and other health care providers and has mandated that patients with disabilities have continuous access to their chosen in-person supports needed to comprehend, communicate, and have equal access to medical care.

36. Christ Hospital explicitly and implicitly promised Rosie that it would provide Rosie competent and professional care while Rosie entrusted her health and welfare to Christ Hospital. Christ Hospital explicitly and implicitly promised Rosie that Rosie could have her essential support person with her while being served by Christ Hospital. Christ Hospital violated its promises and representations to Rosie. Rosie reasonably relied on those Christ Hospital promises and representations to Rosie's significant detriment.

37. Christ Hospital breached its fiduciary obligations to Rosie and was intentionally indifferent to Rosie's chronic and acute medical needs as well as her emotional and spiritual well-being.

38. Christ Hospital violated the reasonable standard of patient care imposed on hospital providers by Ohio law.

39. Christ Hospital's conduct excluding Joy as Rosie's essential support person and its retaliatory conduct were intentional and premeditated.

## V. CLAIMS FOR RELIEF

## COUNT I

### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. 794

40. Rosie incorporates the preceding allegations as if fully restated here.

41. Christ Hospital's conduct violated Section 504 of the Rehabilitation Act of 1973.

## COUNT II

### VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT, 42 U.S.C. 18116

42. Rosie incorporates the preceding allegations as if fully restated here.

43. Christ Hospital is a Covered Entity under the Affordable Care Act.

44. Christ Hospital's conduct violated Section 1557 of the Affordable Care Act.

## COUNT III

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. 12182

45. Rosie incorporates the preceding allegations as if fully restated here.

46. Christ Hospital's conduct violated the Americans with Disabilities Act.

## COUNT IV

### BREACH OF CONTRACT

47. Rosie incorporates the preceding allegations as if fully restated here.

48. Christ Hospital's conduct materially breached its contract for services with Rosie.

## COUNT V

### PROMISSORY AND EQUITABLE ESTOPPEL

49. Rosie incorporates the preceding allegations as if fully restated here.

50. Christ Hospital is estopped from denying its unlawful conduct and the injuries it caused Rosie.

## COUNT VI

### NEGLIGENCE

51. Rosie incorporates the preceding allegations as if fully restated here.

52. Christ Hospital's conduct in attempting to care for Rosie constituted unlawful negligence.

## COUNT VII

### UNLAWFUL DISCRIMINATORY PRACTICES, OHIO REVISED CODE § 4112.02

53. Rosie incorporates the preceding allegations as if fully restated here.

54. Christ Hospital's conduct in attempting to care for Rosie violates Ohio Revised Code § 4112.02 by participating in unlawful discriminatory practices.

WHEREFORE, Plaintiff Rosie Lawrence-Slater demands relief against Defendant The Christ Hospital as follows:

A. Compensatory and punitive monetary damages;

B. Costs of this litigation;

C. Reasonable attorney's fees; and,

D. Such other relief the Court considers just and reasonable.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

>Respectfully submitted,
>
>*/s/ Richard Ganulin*
>RICHARD GANULIN (0025642)
>3662 Kendall Avenue
>Cincinnati, Ohio 45208
>(513) 405-6696
>rganulin@gmail.com
>
>Attorney for Plaintiff